Matter of Emerald Intl. Holdings Ltd. v Tax Appeals Trib. of the State of N.Y. (2020 NY Slip Op 01532)





Matter of Emerald Intl. Holdings Ltd. v Tax Appeals Trib. of the State of N.Y.


2020 NY Slip Op 01532


Decided on March 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 5, 2020

527090

[*1]In the Matter of Emerald International Holdings Ltd., Petitioner,
v
Tax Appeals Tribunal of the State of New York et al., Respondents.

Calendar Date: January 9, 2020

Before: Garry, P.J., Mulvey, Aarons, Pritzker and Colangelo, JJ.


Hurwitz & Fine, PC, Buffalo (Patrick B. Curran of counsel), for petitioner.
Letitia James, Attorney General, Albany (Robert M. Goldfarb of counsel), for Commissioner of Taxation and Finance, respondent.



Colangelo, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal denying petitioner's request for a refund of sales and use tax imposed under Tax Law articles 28 and 29.
Petitioner is the owner of a small retail wine and liquor store located in the Village of Williamsville, Erie County, doing business as Dienhardt's Fine Wines and Spirits. In December 2012, the Department of Taxation and Finance advised petitioner that information from petitioner's alcohol suppliers obtained during a desk audit indicated a potential underreporting on its sales and use tax returns for the audit period of December 1, 2009 to November 20, 2011. As a result, a statement of proposed audit change was issued for additional sales and use tax due. The letter advised petitioner how to proceed if it disagreed with the statement. Petitioner's president, Otu A. Obot, sent the Department a letter seeking a waiver of penalties and interest in connection with that statement for medical reasons. In response, the Department issued petitioner a second statement of proposed audit change dated December 31, 2012, which reflected an identical tax liability of $7,849.57 with interest, for a total due of $9,215.92, and elimination of the penalty. Obot signed and returned the consent contained in the second statement of proposed audit change, thereby consenting to the assessment, and thereafter paid that amount in full. Petitioner claimed to have sent a letter dated March 4, 2013 requesting a refund of that payment, contending that the amount assessed and paid was incorrect. After petitioner was advised that there was no evidence that the letter was filed, petitioner filed a formal application for a credit or refund on July 9, 2014. The Department denied the application, noting that petitioner "supplied no additional information for review and no documentation to refute the agreed signed consent."
Petitioner thereafter filed a petition for redetermination. Following a hearing, an Administrative Law Judge sustained the denial of petitioner's application for a refund, finding that petitioner had not met its burden of demonstrating that the amount of additional tax liability assessed and paid for the period in issue was erroneous. Petitioner filed an exception to that determination challenging, among other things, the effect of Obot's signed consent on the second statement of proposed audit change, the methodology employed in the assessment and the amount due. Upon review of submissions, respondent Tax Appeals Tribunal affirmed the Administrative Law Judge's determination. As relevant here, the Tribunal found that, although petitioner followed the procedure set forth in the second statement of proposed audit change to contest the audit findings, "after petitioner's consent to the amount of additional sales tax, the audit methodology . . . ceased being an issue" because "[a] taxpayer's consent to a proposed assessment contained in a statement of proposed audit changes provides the rational basis necessary for the assessment and finally resolves the issue of whether the audit methodology was reasonable." According to the Tribunal, once Obot signed the consent in his capacity as petitioner's president and mailed the payment to the Department, petitioner could only prevail on its refund claim if it affirmatively established the accuracy of its sales tax return as filed and that the amount of the additional tax assessed was erroneous, which petitioner had failed to do. Petitioner then commenced this CPLR article 78 proceeding to challenge the Tribunal's determination.
We confirm. "Notably, so long as [the Tribunal's] determination has a rational basis and is supported by substantial evidence in the record, it will not be disturbed on review" (Matter of Ruderman v Tax Appeals Trib. of the State of N.Y., 170 AD3d 1442, 1443 [2019] [citation omitted]; see Matter of Zuckerman v Tax Appeals Trib. of the State of N.Y., 174 AD3d 1073, 1074 [2019]). Further, "this Court will defer to the Tribunal's determinations regarding . . . the weight to be accorded the evidence" (Matter of Zuckerman v Tax Appeals Trib. of the State of N.Y., 174 AD3d at 1075 [internal quotation marks and citations omitted]).
Petitioner argues that the consent signed by Obot with regard to the second statement of proposed audit change did not waive its ability to challenge the Department's audit methodology and use of external indices, which it contends was arbitrary and capricious. Initially, we agree with petitioner's contention that the consent signed by Obot did not preclude its ability to challenge the audit methodology. The Tribunal's determination that, by signing the consent, the audit methodology and audit computation ceased being issues is not supported by the express language of the consent itself. Under the terms of the consent, petitioner "consent[ed] to the assessment of the tax and penalties," and "waiv[ed the] right to have a [n]otice of [d]etermination issued" and "to have a hearing to contest the validity and amount of the tax, interest, and any applicable penalties determined and consented to." However, the consent also provided that petitioner could later "contest the findings in this agreement," by "pay[ing] the full amount shown due" and filing a timely "application . . . for a credit or refund." Petitioner complied with this procedure. The consent further allowed that, "[i]f the . . . Department denies [the] application in whole or in part," petitioner could "contest the amount denied, within the time provided by law, in the Bureau of Conciliation and Mediation Services, or in the Division of Tax Appeals, or in both."
The consent contains no language by which petitioner specifically waived its right to contest the methodology used in the audit or consented to that methodology for purposes of a later refund request. Additionally, the consent did not indicate that the waiver of a hearing constituted a waiver of any later challenge to the methodology or the computation of the taxes due, subject to compliance with the procedure for requesting a refund or credit. Likewise, none of the authority upon which the Tribunal relied expressly provides that petitioner's consent constituted an irrevocable agreement with the methodology employed or barred its later challenge to that methodology (see Tax Law §§ 1138 [c]; 1139 [c]; 20 NYCRR 534.1 [b]).[FN1] Although we find that petitioner is not precluded from raising these challenges notwithstanding the consent, we find no basis upon which to disturb the Tribunal's determination.
Turning to the merits of petitioner's challenge, "[w]here, as here, an indirect audit method has been employed, the taxpayer challenging such an audit has the burden of establishing by clear and convincing evidence that the audit method or tax assessment was erroneous" (Matter of Blackhat Chimney & Fireplace, Inc. v Tax Appeals Trib. of the State of N.Y., 145 AD3d 1213, 1214 [2016] [internal quotation marks and citations omitted]; accord Matter of Zuckerman v Tax Appeals Trib. of the State of N.Y., 174 AD3d at 1075). "Although the method selected by the auditor must be reasonably calculated to reflect the taxes due" (Matter of Lombard v Commissioner of Taxation & Fin., 197 AD2d 799, 800 [1993] [internal quotation marks and citation omitted]), "[t]he use of an otherwise acceptable audit method is not rendered unreasonable merely because a different audit methodology might provide a more precise estimate of tax liability" (Matter of MacLeod v Megna, 75 AD3d 928, 930 [2010] [internal quotation marks and citation omitted]).
Petitioner claimed, in a conclusory manner, that the methodology was imprecise. However, "where the taxpayer's own failure to maintain proper records prevents exactness in determination of sales tax liability, exactness is not required" (Matter of Lombard v Commissioner of Taxation & Fin., 197 AD2d at 800 [internal quotation marks, brackets and citation omitted]). Petitioner failed to demonstrate with any "evidence that the methodology [as applied to it] led to unreasonably inaccurate results or that the amount of tax assessed was erroneous" (Matter of Del's Mini Deli v Commissioner of Taxation & Fin., 205 AD2d 989, 991 [1994]; see Matter of Darman Bldg. Supply Corp. v Mattox, 106 AD3d 1150, 1151-1152 [2013]). To that end, "[e]ven if the methodology is imperfect or flawed, petitioner's conclusory allegations of error are insufficient to meet [its] burden of proof" (Matter of Del's Mini Deli v Commissioner of Taxation & Fin., 205 AD2d at 991).
Before relying on external indices to conduct an audit of a taxpayer's transactions, "the [Department] is required to request appropriate records and undertake a sufficient investigation thereof in order to determine whether such materials are capable of supporting a complete audit. Should the records produced by the taxpayer prove to be insufficient to verify taxable sales receipts and conduct a complete audit, the [Department] may rely upon external indices to estimate the correct amount of tax due" (Matter of Wolkowicki v New York State Tax Appeals Trib., 136 AD3d 1223, 1228 [2016] [internal quotation marks and citations omitted]). Although requested, petitioner failed to submit documentation to establish the accuracy of its returns for the period in issue or to support its claim for a refund. Petitioner challenges the Department's use of the cost of operations ratio derived from the Almanac of Business and Industrial Financial Ratios, because it was based upon beer, wine and liquor stores, and petitioner's store does not sell beer. Although the use of a methodology that excluded stores that sold beer "might [have] provide[d] a more precise estimate of [petitioner's] tax liability," such methodology is not required, and the methodology employed was not thereby rendered unreasonable or erroneous (Matter of MacCleod v Megna, 75 AD3d at 930 [internal quotation marks and citation omitted]).
Accordingly, we discern no error in the Department's methodology relying on external indices in determining petitioner's tax assessment. Moreover, petitioner wholly failed to demonstrate that the tax assessment was erroneous or its entitlement to the claimed refund. As the Tribunal's determination had a rational basis and was supported by substantial evidence, it will not be disturbed.
Garry, P.J., Mulvey, Aarons and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: In concluding that petitioner's consent "finally resolves the issue of whether the audit methodology was reasonable," the Tribunal relied upon Tax Law § 1138 (c). In its current form, that statute merely provides a taxpayer with the mechanism to consent to "a tax due assessed." Additionally, this provision allows a taxpayer to receive and pay the proposed tax assessment prior to the 90-day period set forth in Tax Law § 1138 (a) (1) by signing and filing a written consent. This provision does not indicate that a later challenge to the audit methodology is precluded by a signed consent (see Tax Law § 1138 [c]).
The Tribunal relied upon precedent dating back to 1992 interpreting a former version of Tax Law § 1138 (c), which had provided that the signed consent "finally and irrevocably fixed" the amount of tax due, language not contained in the current version of that statute (Tax Law § 1138 [former (c)] [emphasis added]). The Tribunal also relied upon that prior precedent construing a former version of Tax Law § 1139 (c), which had specifically provided that a person who signs a consent pursuant to Tax Law § 1138 former (c) may apply for a refund or credit "but such application shall be limited to the amount of such payment" (Tax Law § 1139 [former (c)] [emphasis added]; see Matter of RJB Slick's, Inc. N/K/A RKB Ventures, Inc., 2016 WL 2974385, *6, 2016 NY Tax LEXIS 250, *16 [N.Y. Tax Appeals Trib. DTA No. 825079, May 12, 2016]; Matter of SICA Elec. & Maint. Corp., 1997 WL 907894, *9-10, 1998 NY Tax LEXIS 73, *26-*27 [N.Y. Tax Appeals Trib. DTA No. 813706, Feb. 26, 1998]). Although the highlighted language quoted above is not contained in the current, applicable versions of those statutes, the Tribunal did not address how this change in the law affects its longstanding precedent and respondent Commissioner of Taxation and Finance has not done so in this proceeding. Accordingly, we decline to do so.