Matter of Parikh v Schmidt (2021 NY Slip Op 06893)





Matter of Parikh v Schmidt


2021 NY Slip Op 06893


Decided on December 9, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 9, 2021

531561
[*1]In the Matter of Dipesh Parikh, Petitioner,
v
Michael R. Schmidt, as Commissioner of Taxation and Finance, et al., Respondents.

Calendar Date:October 22, 2021

Before:Garry, P.J., Lynch, Clark, Pritzker and Colangelo, JJ.

Vella, Carbone & Associates, LLP, Delmar (Aaron F. Carbone of counsel), for petitioner.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for Commissioner of Taxation and Finance, respondent.



Garry, P.J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining sales and use tax assessments imposed under Tax Law articles 28 and 29.
At all relevant times, petitioner was the president of Hotel Depot, Inc., a New Jersey company specializing in the sale and installation of hotel furnishings. The Department of Taxation and Finance conducted an audit of Hotel Depot's sales and use tax liability for the period of June 2005 through February 2011. Upon completion of the audit, the Department issued petitioner — as a person responsible to collect, account for and remit sales and use tax on behalf of Hotel Depot — a notice of determination asserting additional sales tax due in the amount of $2,356,443.87, plus interest, for goods and services that were billed to purchasers located in New York. Petitioner submitted to the Division of Tax Appeals a petition for redetermination, asserting that Hotel Depot is not responsible for collecting sales tax on out-of-state transactions. An Administrative Law Judge (hereinafter ALJ) conducted a hearing in February 2018 but retired soon thereafter, so a newly assigned ALJ rendered a decision denying the petition and sustaining the Department's determination. Petitioner filed an exception to the ALJ's determination. After respondent Tax Appeals Tribunal upheld that determination, petitioner commenced this CPLR article 78 proceeding challenging the Tribunal's determination.
"Whenever an administrative law judge is disqualified, or it becomes impractical for him or her to continue the hearing, another administrative law judge may be assigned to continue with the case, unless it is shown that substantial prejudice to a party will result therefrom" (20 NYCRR 3000.15 [f]; see Matter of KT's Junc., Inc. v New York State Div. of Human Rights, 74 AD3d 1910, 1911 [2010]; Matter of Schweizer Aircraft Corp. v New York State Div. of Human Rights, 220 AD2d 855, 855-856 [1995], lv denied 87 NY2d 805 [1996]; see also State Administrative Procedure Act § 303). Pursuant to this regulation, substitution of a new ALJ was permissible here, unless petitioner shows that substantial prejudice resulted. He asserts prejudice based on the new ALJ's inability to personally observe the witness to make credibility determinations. Although an ALJ generally makes credibility assessments in the first instance (see Matter of Rubin v Tax Appeals Trib. of State of N.Y., 29 AD3d 1089, 1091 [2006]), upon review this Court defers to credibility determinations rendered by the Tribunal — not the ALJ — even though the Tribunal always makes such credibility determinations based on a cold record (see Matter of Ingle v Tax Appeals Trib. of the Dept. of Taxation & Fin. of the State of N.Y., 110 AD3d 1392, 1393 [2018]; see also Matter of Schweizer Aircraft Corp. v New York State Div. of Human Rights, 220 AD2d at 856). "[A]s it is [the Tribunal], not [*2]the ALJ, [that] is responsible for making the ultimate factual determinations, the fact that the latter must, on some occasions, evaluate credibility on the basis of a written record does not lead inexorably to a finding of prejudice" (Matter of Schweizer Aircraft Corp. v New York State Div. of Human Rights, 220 AD2d at 856). In any event, as petitioner did not present any witnesses or exhibits, the ALJ had to review only the testimony of the Department's auditor, who referred to and explained the documentary evidence. Under the circumstances, petitioner failed to meet his burden of demonstrating that assignment of a new ALJ caused irreparable harm, as required to support annulment of the Tribunal's determination (see id.).
Turning to the merits, "[t]his Court's scope of review is limited; so long as the Tribunal's determination is rationally based and is supported by substantial evidence, it must be confirmed, even if a different conclusion would not have been unreasonable" (Matter of Toronto Dominion Holdings [U.S.A.], Inc. v Tax Appeals Trib. of the State of N.Y., 162 AD3d 1255, 1257 [2018], lv denied 32 NY3d 907 [2018]; see Matter of Sznajderman v Tax Appeals Trib. of the State of N.Y., 168 AD3d 55, 61 [2019]). "Where, as here, [the] petitioner challenges the audit method employed or the result of the audit, [he or she] bears the burden of establishing, by clear and convincing evidence, that the method was erroneous and the taxes found to be due were incorrect" (Matter of Darman Bldg. Supply Corp. v Mattox, 106 AD3d 1150, 1151 [2013] [citations omitted]).
Tax Law § 1105 requires the payment of sales tax on, among other things, "[t]he receipts from every retail sale of tangible personal property" (Tax Law § 1105 [a]) and from every sale of services involving the installation of tangible personal property (see Tax Law § 1105 [c] [3]). "Receipt" is defined as "[t]he amount of the sale price of any property and the charge for any service taxable under [Tax Law article 28]" (Tax Law § 1101 [b] [3]). A "[s]ale" is "[a]ny transfer of title or possession or both . . . in any manner or by any means whatsoever for a consideration, or any agreement therefor, including the rendering of any service, taxable under [article 28], for a consideration or any agreement therefor" (Tax Law § 1101 [b] [5]). By statute, "it shall be presumed that all receipts for property or services of any type mentioned in [Tax Law § 1105 (a)-(d)] . . . are subject to tax until the contrary is established, and the burden of proving that any receipt . . . is not taxable [t]hereunder shall be upon the person required to collect tax" (Tax Law § 1132 [c] [1]; see 20 NYCRR 532.4 [a] [1]; [b] [1]; Matter of Petak v Tax Appeals Trib. of State of N.Y., 217 AD2d 807, 808-809 [1995]).
Sales tax must be collected by every person making sales of taxable tangible personal property or services in the state (see Tax Law §§ 1131 [1]; 1108 [former (8)]; 20 NYCRR 526.10 [a]). "This may [*3]include a person entering [New York] from outside the state to perform services on property located in this [s]tate" (20 NYCRR 526.10 [a] [1] [ii]). Pursuant to 20 NYCRR 525.2 (a) (3), "the sales tax is a 'destination tax.' The point of delivery or point at which possession is transferred by the vendor to the purchaser, or the purchaser's designee, controls both the tax incidence and tax rate."
At the hearing, the Department's auditor testified that the audit was based on Hotel Depot's records and the Department determined that it possessed adequate records upon which to conduct a detailed audit.[FN1] The record contains more than 500 pages of documents that the Department received from Hotel Depot, although many more were reviewed and audited. Some records that were requested, such as the business's general ledger, were not produced for review. The Department relied on the "ship to" address listed on Hotel Depot's invoices to determine whether a sale took place in this state. Petitioner argues that no New York sales tax was owed because the transfer of tangible personal property occurred in New Jersey where Hotel Depot provided the items to common carriers, who were allegedly the designees of the purchasers (see 20 NYCRR 525.2 [a] [3]; see also Matter of Savemart, Inc. v State Tax Commn., 105 AD2d 1001, 1003 [1984], appeal dismissed 64 NY2d 1039 [1985], lv denied 65 NY2d 604 [1985]; Chase Manhattan Bank v Nissho Pac. Corp., 22 AD2d 215, 221 [1964], affd 16 NY2d 999 [1965]). However, the record does not support this assertion. Many of Hotel Depot's invoices include freight charges, but they do not reveal whether the purchased items were shipped to purchasers in New York by common carrier, personally delivered there by Hotel Depot employees or arrived in some other way. Although petitioner complains that the Department never requested shipping records during the audit, the record contains at least two requests for documents, including "[p]ayments made for freight bills and delivery charges for the audit period." In any event, even if the shipping records had not been requested during the audit, petitioner could have produced those records during the hearing to support his argument — but he did not.
The record includes documents listing Hotel Depot's terms and conditions for certain sales. One term is that "[a]ll shipments are by common carrier," but other terms provide that Hotel Depot "shall make all reasonable effort[s] to make timely delivery of the good[s] to the destination" and that, "[f]reight terms notwithstanding, title shall pass to, and the buyer shall bear the risk of loss, deterioration or damage of, the goods from the time the goods arrive at the buyer's destination." Even though these terms and conditions do not apply to all of Hotel Depot's sales, they demonstrate that, for at least some of the business's sales, title passes at the buyer's destination. This is further evidence that petitioner is responsible for the collection [*4]of sales tax for New York purchasers.
It was reasonable for the Department to assume that installation services and premeasurement services would occur at the purchaser's location in New York, such that invoice charges for those services were taxable (see Tax Law § 1105 [c] [3]).[FN2] The Department had a rational basis for its issuance of the original notice and its underlying methodology, yet petitioner submitted no evidence. "The Department had no burden to demonstrate the propriety of the assessment," and petitioner's failure "to produce any evidence demonstrating that the assessment was erroneous left standing the presumption of correctness which attached to the notice of deficiency" (Matter of Leogrande v Tax Appeals Trib., 187 AD2d 768, 769 [1992] [internal quotation marks, brackets and citation omitted], lv denied 81 NY2d 704 [1993]; see Matter of Darman Bldg. Supply Corp. v Mattox, 106 AD3d at 1151). As the Tribunal rationally concluded that petitioner failed to meet his burden of establishing that the audit was unreasonable either as to method or result, and its determination is supported by substantial evidence, we confirm (see Matter of Darman Bldg. Supply Corp. v Mattox, 106 AD3d at 1151-1152; Matter of Leogrande v Tax Appeals Trib., 187 AD2d at 769; Matter of David Hazan, Inc. v Tax Appeals Trib. of State of N.Y., 152 AD2d 765, 766-767 [1989], affd 75 NY2d 989 [1990]).
Lynch, Clark, Pritzker and Colangelo, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: Although the original notice inaccurately stated that the tax delinquency was based on an estimated audit, petitioner has not demonstrated any prejudice from that error.

Footnote 2: Although some of Hotel Depot's invoices stated that installation or premeasurement services were provided by the manufacturer, Hotel Depot was required to pay sales tax for the receipts of payment for those services for which it was billing customers in New York (see Tax Law §§ 1101 [b] [3]; 1105 [c] [3]).