Matter of Beeline.Com, Inc. v State of N.Y. Tax Appeals Trib. (2026 NY Slip Op 00175)

Matter of Beeline.Com, Inc. v State of N.Y. Tax Appeals Trib.

2026 NY Slip Op 00175

Decided on January 15, 2026

Appellate Division, Third Department

McShan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 15, 2026

CV-24-1494

[*1]In the Matter of Beeline.Com, Inc., Petitioner,
vState of New York Tax Appeals Tribunal et al., Respondents.

Calendar Date:November 17, 2025

Before: Garry, P.J., Clark, Aarons, McShan and Mackey, JJ.

Akerman LLP, New York City (Michael J. Bowen of Akerman LLP, Jacksonville, Florida, of counsel, admitted pro hac vice), for petitioner.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for Acting Commissioner of Taxation and Finance, respondent.

McShan, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a sales tax assessment imposed under Tax Law article 28.
Petitioner is a Florida company that matches clients with suppliers of contingent and temporary labor and provides services associated with the management, retention and invoicing of such labor. To provide these services, petitioner uses a proprietary technological platform, access to which is controlled by agreements with each client and each labor supplier. In September 2016, the Department of Taxation and Finance (hereinafter the Department) commenced a sales and use tax audit of petitioner based on its belief that petitioner was selling licenses to use prewritten computer software — which is subject to sales tax (see Tax Law §§ 1101 [b] [6], [14]; 1105 [a]) — referred to as the "vendor management system" (hereinafter VMS). The Department ultimately determined that petitioner owed unpaid sales tax and interest on the fees charged to clients for the VMS during the audit period of June 2010 through May 2016. After a conciliation conference resulted in the Department's determination being sustained, petitioner applied to the Division of Tax Appeals for redetermination of its deficiency, contending that it did not sell prewritten computer software and, even if it did, the "true object" of its business was to provide the service of "matching . . . buyers and sellers" of contingent and temporary labor, not to sell software.[FN1] Following a hearing, an Administrative Law Judge (hereinafter ALJ) sustained the Department's determination, concluding that petitioner was selling licenses to use prewritten computer software, namely the VMS, and that such licenses were not merely incidental to its business. Petitioner filed an exception to the ALJ's decision with respondent Tax Appeals Tribunal. The Tribunal affirmed the ALJ's determination, likewise concluding that petitioner was engaging in the sale of licenses to use prewritten computer software through its provision of the VMS and that this was the "core element" of its business. Petitioner commenced this CPLR article 78 proceeding in this Court to annul the Tribunal's determination.
We confirm. "It is well settled that our review in tax proceedings is limited. If the Tribunal's determination is rationally based upon and supported by substantial evidence, it must be confirmed, even if it is reasonably possible to reach a different conclusion" (Matter of Galileo Intl. Partnership v Tax Appeals Trib. of Dept. of Taxation & Fin. of State of N.Y., 31 AD3d 1072, 1074 [3d Dept 2006] [internal quotation marks and citations omitted], lv denied 7 NY3d 715 [2006]; see Matter of Dynamic Logic, Inc. v Tax Appeals Trib. of the State of N.Y., ___ NY3d ___, ___, 2025 NY Slip Op 02262, *2 [2025]). As relevant here, there is a statutory presumption " 'that all receipts for property or services of any type [*2]mentioned in Tax Law § 1105 (a)-(d) are subject to tax until the contrary is established, and the burden of proving that any receipt is not taxable thereunder shall be upon the person required to collect tax' " (Matter of Parikh v Schmidt, 200 AD3d 1237, 1239 [3d Dept 2021] [internal brackets and ellipses omitted], quoting Tax Law § 1132 [c] [1]; accord Matter of Strata Skin Sciences, Inc. v New York State Tax Appeals Trib., 225 AD3d 953, 954 [3d Dept 2024], lv denied 42 NY3d 906 [2024]). "Upon review, this Court will defer to the Tribunal's determinations regarding witness credibility and the weight to be accorded the evidence" (Matter of Zuckerman v Tax Appeals Trib. of the State of N.Y., 174 AD3d 1073, 1075 [3d Dept 2019] [internal quotation marks and citations omitted]; see Matter of Flair Beverages Corp. v New York State Tax Appeals Trib., 229 AD3d 1012, 1013 [3d Dept 2024], appeal dismissed 42 NY3d 1068 [2025], lv denied 44 NY3d 902 [2025]).
Petitioner's overarching contention is that it does not sell prewritten computer software in any form; rather, petitioner insists that it primarily provides nontaxable services through the use of a technological platform. For purposes of Tax Law § 1105 (a), sales of tangible personal property are defined in relevant part as "[a]ny transfer of title or possession . . . or license to use or consume" corporeal personal property "for a consideration," including "pre-written computer software, whether sold as part of a package, as a separate component, or otherwise, and regardless of the medium by means of which such software is conveyed to a purchaser" (Tax Law § 1101 [b] [5], [6]). A transfer of possession in the context of a license to use tangible personal property involves transfer of either "(i) custody or possession of the tangible personal property, actual or constructive; (ii) the right to custody or possession of the tangible personal property; [or] (iii) the right to use, or control or direct the use of, tangible personal property" (20 NYCRR 526.7 [e] [4]).
In making its determination, the Tribunal primarily looked to the plain language of various sample client agreements utilized by petitioner. Although the agreements contained some differences in language, there were prominent consistencies underlying the general arrangements between petitioner and its clients. One such agreement, from 2014, entered into the record, defines the VMS as petitioner's "vendor management system, a web based application delivered through a software-as-a-service model," with those services listed and defined in an accompanying addendum. Of particular importance, the agreement further provides that petitioner "grants to [c]lient a limited, nonexclusive, nontransferable license to use and access the Beeline VMS solutions," which was "limited solely to the right to access the Beeline VMS via the World Wide Web and [would] not include the transfer or distribution of software or source code to [c]lient." Petitioner's website [*3]similarly identified the VMS as "the software that automates the hiring process of contract workers" and expressly provided that petitioner was affording clients and suppliers a license to use the VMS. This proof was sufficient to establish that petitioner had provided its clients "the right to use" the software and, accordingly, a license to use it within the meaning of the Tax Law (20 NYCRR 526.7 [e] [4] [iii]). Based on the plain language in petitioner's client agreements, the Tribunal was within its discretion to reject testimony presented by petitioner which suggested that the licensure language in its agreements was merely included to protect its intellectual property, and we discern no basis to disturb its determination in that respect (see Matter of Apple, Inc. v Tax Appeals Trib. of the State of N.Y., 204 AD3d 1173, 1176-1177 [3d Dept 2022]; see also Matter of Emerald Intl. Holdings Ltd. v Tax Appeals Trib. of the State of N.Y., 181 AD3d 1003, 1008 [3d Dept 2020]; Matter of Ingle v Tax Appeals Trib. of the Dept. of Taxation & Fin. of the State of N.Y., 110 AD3d 1392, 1394 [3d Dept 2013]). Accordingly, the Tribunal's determination that petitioner made retail sales of tangible personal property by providing a license to use the VMS is rational and supported by substantial evidence (see Tax Law §§ 1101 [b] [4] [i]; [5], [6]; 1105 [a]; Matter of Parikh v Schmidt, 200 AD3d at 1241).[FN2]
Petitioner also contends that its software is not prewritten because it is tailored to each client's needs. However, that tailoring amounts chiefly to the reconfiguration of forms and the harmonization of document formats and, as acknowledged by the testimony of its representative, did not require amendment of the software's code. Petitioner's client contracts buttress that point, as they expressly provide that client use of its software will be "in a standard fashion . . . without customization or change of software code." Thus, it was rational for the Tribunal to conclude that petitioner's software is not "designed and developed . . . to the specifications of a specific purchaser" and is thus properly characterized as prewritten computer software (Tax Law § 1101 [b] [14]).
Finally, petitioner argues that, in situations where a sale of tangible personal property is bundled with the provision of nontaxable services, the Tribunal must apply the primary function test, or true object test, to determine whether the services or the tangible personal property are the predominant feature of each transaction and tax the transaction accordingly. As noted by the Tribunal, its historical use of the primary function test arises in cases that involve the classification, and taxable nature, of certain types of services (see Tax Law § 1105 [c] [1]), rather than the "mixed bundle" that is present here (compare Matter of Principal Connections Ltd., 2004 WL 319283, *12, 2004 NY Tax LEXIS 23, *31-32 [NY St Div of Tax Appeals DTA No. 818212, Feb. 12, 2004], and Matter of SSOV '81 Ltd[*4]., 1995 WL 36181, *7, 1995 NY Tax LEXIS 18, *18 [NY St Div of Tax Appeals DTA Nos. 810966, 810967, Jan. 19, 1995], with Matter of Strata Skin Sciences, Inc., 2022 WL 1667874, *12, 2022 NY Tax LEXIS 55, *34 [NY St Div of Tax Appeals DTA No. 828704, May 5, 2022], affd 225 AD3d 953 [3d Dept 2024], lv denied 42 NY3d 906 [2024]; see also Matter of Dynamic Logic, Inc. v Tax Appeals Trib. of the State of N.Y., ___ NY3d at ___, 2025 NY Slip Op 02262, *2). However, despite petitioner's insistence that the Tribunal eschewed a primary function analysis, it is clear from its determination that it engaged in its functional equivalent by thoroughly assessing whether the license provided to petitioner's clients to use the VMS "is incidental to the services rendered" (Matter of Mendoza Fur Dyeing Works, Inc. v Taylor, 272 NY 275, 279 [1936]; see Matter of Business Statistics Org. v Joseph, 299 NY 443, 452 [1949]; Dun & Bradstreet, Inc. v City of New York, 276 NY 198, 205 [1937]; Matter of Strata Skin Sciences, Inc. v New York State Tax Appeals Trib., 225 AD3d at 955-956).
In that respect, the Tribunal ultimately assessed the use of the VMS software in conjunction with petitioner's services and determined that that the software was central to those services rather than incidental (see Matter of Strata Skin Sciences, Inc. v New York State Tax Appeals Trib., 225 AD3d at 955-956; Matter of Galileo Intl. Partnership v Tax Appeals Trib. of Dept. of Taxation & Fin. of State of N.Y., 31 AD3d at 1074; see also Matter of 21 Club, Inc. v Tax Appeals Trib. of State of N.Y., 69 AD3d 996, 997 [3d Dept 2010]). That analysis concluded that, following the onboarding process, the software was the primary means for clients to request labor, select candidates for consideration, and bill for labor, and that petitioner's clients were ultimately paying for the VMS in order to accomplish those tasks. Further, pursuant to the terms of some of petitioner's client agreements, an interruption in availability of the core functions of the VMS software would entitle customers to a credit or even the right to terminate their agreement with petitioner. Although petitioner notes the amount of effort expended during the onboarding process, the implementation of the VMS for its clients' use and, relatedly, that the VMS software is not sold separately from the services it provides, those facts did not preclude the Tribunal's determination that the software "had market value distinct from the services rendered" (Matter of Strata Skin Sciences, Inc. v New York State Tax Appeals Trib., 225 AD3d at 956).[FN3] As those findings are supported by substantial evidence, we find no grounds to disturb the Tribunal's ultimate determination that the license provided by petitioner was the core function of the transactions at issue, thus rendering them subject to a tax as a sale of tangible personal property (see Matter of Galileo Intl. Partnership v Tax Appeals Trib. of Dept. of Taxation & Fin. of State of N.Y., 31 [*5]AD3d at 1074-1075).
Garry, P.J., Clark, Aarons and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: Petitioner stipulated that it was not challenging the methodology of the audit or the calculation of its deficiency. Further, although the audit was for both sales and use tax and the deficiency determination references both types of tax, petitioner was only assessed a deficiency in sales tax.

Footnote 2: To the extent that petitioner suggests that no consideration is paid by the client, we agree with the Tribunal's rejection of that assertion, as petitioner's agreements clearly provide that the obligation to pay petitioner rests with the client, not with the supplier, and that the supplier is merely required to accept a payment diminished by the amount the client owes to petitioner. Thus, the Tribunal rationally determined that each client pays petitioner "monetary consideration" for the license to use its software (20 NYCRR 526.7 [b]).

Footnote 3: Although Tax Law § 1115 (o), provides an exemption for taxable services performed on "computer software of any nature" where such services are "provided . . . in conjunction with the sale of tangible personal property," they are exempt "only when such charge is reasonable and separately stated." Because petitioner did not separately state charges for other services that may have been nontaxable, the Tribunal concluded that those services did not qualify for this exemption.